UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOUGLAS NIVEN and the AIRCRAFT
MECHANICS FRATERNAL
ASSOCIATION,

    Plaintiffs,

    v.

UNITED AIRLINES, INC.,

    Defendant.

No. 05 C 832
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

**I.    Introduction**

United Airlines ("UAL") fired Douglas Niven, an aircraft mechanic, in 2001 for the stated reason that he subjected another employee to religion-based harassment. He grieved this discharge according to the collective bargaining agreement ("CBA") covering members of the International Association of Machinists. Niven was dissatisfied with the outcome of that procedure and also sought arbitration under the CBA. He contended that the stated reason for his firing was pretext. Niven believed that his firing was actually retaliation for his allegations that UAL improperly maintained military equipment in South Carolina while working under a contract with the Department of Defense.

In early 2003, before the arbitration occurred, Niven filed a civil *qui tam* action under the False Claims Act against UAL in federal court in South Carolina. He settled that case in April of the same year. UAL paid Niven $640,000 and he, in turn, released his claims. More precisely, Niven signed a statement on behalf of himself and any of his representatives that he "individually, hereby waives, releases and forever discharges UAL from any and all claims,

causes of action, suits, actions or demands that were asserted in the second amended complaint, or arising from or related to this Qui Tam Action." The judge dismissed the South Carolina case with prejudice in January 2004.

Niven and his current union, the Aircraft Mechanics Fraternal Association, now want the arbitration for his dismissal to go forward as well, and ask me to require UAL to proceed. UAL believes that this grievance was waived by the release Niven signed in the *qui tam* action, and argues it is entitled to summary judgment upholding its refusal to arbitrate. For the reasons below, summary judgment is denied, without prejudice.

## II.     Analysis

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in Plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Plaintiff must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The core of the difference between the parties here arises because Niven's actual grievance never alleged retaliation. The grievance simply says that he was within his rights to

2

take the actions he took with respect to the machinist he was accused of harassing, and that he had no motive of religious bias. Niven's position makes the case somewhat simpler than it might otherwise be because he simply denies, as a matter of fact, that he released his right to arbitrate the discharge. He also contends that it is the arbitrator's responsibility to decide whether there is a release and, if necessary, the scope of that release. In Niven's view, the worst case for him is that he would be precluded from arguing to the arbitrator that UAL's discharge was pretextual.

The easier issue is the proper person to decide the scope of the release. The arbitrator is limited to deciding the meaning and application of the CBA, but interpretation of the CBA is not at issue here. The document in question is the release that Niven signed as part of his agreement to end a federal case. Niven does not argue that the union and management explicitly agreed that releases like these would be interpreted by arbitrators, so whatever rights UAL has here were created by Niven's agreement releasing his claims, not by the CBA. "[T]he RLA's mechanism for resolving minor disputes [those involving the interpretation or application of existing labor agreements] does not pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines v. Norris,* 512 U.S. 246, 256 (1994). Therefore I will ultimately decide the scope of the release.

The more difficult issue is the scope of the release. To decide that, I must first look at the words of the release themselves. UAL relies on the language releasing "any and all claims . . . arising from or related to this *Qui Tam* Action," to define the scope of the release. Language saving the right to arbitrate the discharge could have been part of the agreement if the parties

desired, but it is not. So the question is whether the discharge issue is a claim which is "related to the *qui tam* action."[1]

To show that the arbitration is "related to" the *qui tam* action, UAL cites Niven's allegations in the South Carolina complaint that the company actively retaliated against employees who opposed its conduct by "adverse employment actions" and other means. In addition, UAL relies on the fact that in two other lawsuits, Niven explicitly stated that he was fired solely because of his opposition to UAL's practices in South Carolina. The first instance was in a complaint he filed against a subsequent employer and a deposition in the same case. The second time was in another case, in which he testified that he was fired "for blowing the whistle on them." UAL even points to an example from one of the mediations leading up to the demand for arbitration, when one of Niven's attorneys was identified as "counsel representing Plaintiff Niven as *qui tam* relator." These facts could be relevant to showing the scope of the release, if the release is already ambiguous. However, UAL is not only offering them as aids to interpret the release. Instead, it claims this is evidence of judicial estoppel, which should preclude Niven from arguing <u>here</u> that his grievance has nothing to do with the South Carolina case.

The doctrine of judicial estoppel is "strong medicine," which requires that a party "obtain a victory on one ground and then repudiate that ground in a different case in order to win a second victory." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993). The party must have "obtained a favorable judgment or settlement on the basis of a factual contention

---

[1] I do not believe the discharge claim "arises from" the South Carolina case because the discharge occurred well before the complaint was filed in federal court there. The discharge issue would exist even if the *qui tam* had never been brought.

that he wants to repudiate in the current litigation." *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir. 1998) (citations omitted). UAL is misreading *McNamara* when it claims that Niven is only required to have previously obtained a favorable judgment when claiming a certain fact. As the Seventh Circuit stated, the prior judgment must have been based on the same fact that Niven now seeks to contradict. UAL has not shown that his statements about the true motive for his discharge were the bases of the claims (or even a decisive factor) in either the *qui tam* action or the case against AAI Engineering Support. As a result, UAL has not made out a case for summary judgment based on judicial estoppel.

So finally we are left with whether the discharge grievance is related to the *qui tam* action. The documents submitted for the summary judgment record show that both Niven and UAL certainly thought it was related, but I am unsure. The problem with UAL's contention is that the original grievance did not raise improper motive as one of the grounds for wrongful discharge. Due to the release he signed, it may be the case that Niven has given up his claim challenging the discharge on the specific grounds that he was retaliated against. However, the request for arbitration only claimed that the facts UAL offered were neither proven nor enough to justify his discharge.[2] I cannot grant summary judgment based on this incomplete record.

---

[2] In the grievance, Niven contended that he considered the religious accommodation for day shifts to Zuk to be a violation of the CBA. Weeks later, while supervising Zuk on one of those day shifts, Zuk did not perform the work he was ordered to do on the engine nose cowl. "Some words were exchanged" between Zuk and Niven, and Niven was held out of service. Niven offered his position that there was no rule violation because "there were no threats made against Mr. Zuk by the Grievant. What transpired . . . was a disagreement about the priority of work . . . on . . . the cowl." "Mr. Zuk asked the Company to drop the charges" regarding a different rule violation. With regard to the final rule, UAL claimed Niven "called Mr. Zuk an atheist and a liar, yet when one reads Mr. Zuk's written statement . . . there seems to be no logical reason for the use of such words."

This wrongful dismissal claim could be much less persuasive if Niven is not allowed to argue that the only way to explain the discharge is that UAL was seeking revenge against him, but I do not know enough yet to say. The parties did not address the question of whether the release operates to estop Niven from basing his arbitration claim on retaliation, or whether it is permissible for a Court to enter an order limiting the right to make a particular argument. It is common for judges to enter bar orders against parties in court, prohibiting them from proceeding with some, but not all, claims pending in other fora. However, I will give the parties an opportunity to argue the application of this practice to arbitrations under collective bargaining agreements. I will also allow United to attempt to perfect its factual record on judicial estoppel, subject to Niven's right to refute the argument.

Finally, I decline here to decide whether the release is or is not unambiguous. In the event that I find it necessary to consider extrinsic evidence, I will hear testimony from both John Midgett and from Niven or his South Carolina lawyer (possibly both). The hearing would be held promptly.

Defendant's motion for summary judgment is denied without prejudice.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 5, 2006